[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has instituted this action seeking to recover from the defendant for engineering services performed under an agreement between the parties. The defendant denies owing any sums to the plaintiff and alleges as a special defense the plaintiff failed to complete the work contracted to be performed and the services performed did not have any value. The defendant claims by way of set off that he lost commissions on lots and incurred damages because of the actions of the Plaintiff. The defendant has also filed a counterclaim against the plaintiff seeking to recover for a breach of contract; willful, wanton and reckless conduct; and a violation of the Connecticut Unfair Trade Practices Act.
The defendant contacted the plaintiff prior to January 1989 regarding engineering services on a 70-acre parcel of land in Bolton, Connecticut. On January 16, 1989, Michael Turner, a professional engineer in the plaintiff's corporation, submitted a proposal for the subdivision work to be performed. The proposal was based upon a survey map prepared by Mr. Szestowicki, a surveyor, and this map was delivered to the plaintiff by the defendant. The proposal provided for survey and engineering services to develop the parcel for subdivision approval. The scope of the work was to be provided in four phases. The proposal stated that if defendant accepted and notice to proceed in writing was executed by the defendant by January 24, 1989, then the following schedule would apply:
Phase I Data Collection, March 15, 1989 CT Page 8416
 Phase II Front Lot Subdivision — Submit April Meeting
 Phase III Entire Project Subdivision Submit May/June Meeting
The proposal requested a $5000 retainer and then provided for payment of the plaintiff's services as follows:
Phase I $22,000.00
Phase II 5,000.00
Phase III 35,000.00
The payment schedule also provided any unpaid balance was subject to a 1 1/2 percent interest charge and the engineer may cease work until the account balance is paid in full.
The defendant delayed in signing the proposal, and on April 14, 1989, the defendant in a telephone conversation advised Turner he wanted to proceed with the work, and they verbally agreed the submission schedule would be pushed ahead by the time delayed in signing the proposal. On April 25, 1989, the proposal, which was dated April 19, 1989, and addressed to Stonyridge, Inc. of Bolton, Connecticut, was agreed and accepted by the defendant Rosaireo Landgo and George Negro, the owner of the land. The execution of the contract on April 25, 1989, constituted the written notice to proceed, and on that date the defendant delivered his personal check for the $5000 retainer. The defendant also made another payment to the plaintiff on May 26, 1989, with his personal check for the sum of $9,300.00.
Prior to the execution of the contract, the plaintiff proceeded with a soil testing program with a test pit layout based upon a grid system to obtain a profile of the site. The testing was done between February and May 1989 during the ground water testing season. The testing was performed for the plaintiff by Terry Hinchey, licensed sanitarian; Tom Thorton, an engineer in training; and under the supervision f Michael Turner, a professional engineer. During the testing period, Robert Senkow, the town sanitarian and building inspector, observed the testing program. CT Page 8417
By April 26, 1989, the raw data from the testing program had been completed, and $9,300.00 was billed to defendant Langdo, which was paid by him May 26, 1989, with his personal check. This was the last payment made by the defendant on this project. By June 23, 1989, the plaintiff had completed 50 percent of the project, and by August 31, 1989, 70 percent of the work was completed with $35,656.51 due from the defendant. The plaintiff now claims the defendant is indebted to it for the principal sum of $36,385.00, plus interest based on the contract of 1 1/2 percent per month which totals $96,447.38, for the total sum of $132,832.38 as of August 12, 1997.
On August 23, 1989, the plaintiff advised the defendant in writing they had stopped all work until the account is brought current. On September 21, 1989, the plaintiff advised the defendant in writing of a proposed moratorium on development in Bolton and again requested defendant to pay the outstanding bill so the project could proceed. The defendant ignored the requests for payment, and on December 27, 1989, plaintiff requested in writing that the defendant be present at a meeting January 9, 1990 to discuss the project. The defendant responded by telephone the town of Bolton refused to accept the test hole results because a professional engineer was not present during the testing program.
As a result of that response, the plaintiff wrote to Robert Senkow, the town sanitarian, advising the tests were done properly and the information from the tests was available. Mr. Senkow responded on March 22, 1990, disputing the testing procedures and the adequacy of the data provided by the plaintiff. He also advised that a moratorium on subdivisions now prevented this project from being accepted and approved.
Terrence Hinchey, the certified sanitarian of the plaintiff on this project, testified that during the testing period he was never asked for a map by Senkow, the town sanitarian. He did have maps disclosing the test locations which he could provide if requested. He also did test procedures with Senkow present, and the town sanitarian found no fault with his work or the data compiled during the testing period. By April 25, 1989, all the data regarding test holes and percolation tests was completed and noted on maps (Pl. Exh. W X). The locations can be determined by surveying instruments. All the data was available for submission to Planning and Zoning Commission, but defendant never gave permission to the plaintiff to proceed. CT Page 8418
Robert Senkow, the Bolton sanitarium and building official, testified he did random samplings during the testing at the site, and Michael Turner, the P.E. for the plaintiff, was never present. His only contact on the project was with Hinchey, the plaintiff's sanitarian. He testified he refused to accept the project because insufficient data was submitted to him to designate the location of the test holes or the test results. He claimed a map was never delivered to him to verify the tested sites.
The defendant Rosaireo Langdo testified he contacted the plaintiff in late 1988 as an agent of Stonyridge, Inc. to discuss engineering services for a subdivision of a 60-acre farm owned by George Negro. He then was present every day during the test period. He and Negro signed the contract on April 25, 1989. He also paid the retainer of $5000 and a payment of $9,300.00 with his personal checks. He claimed the plaintiff never delivered logs or maps to the town which would permit approval of front lots by the Planning and Zoning Commission at its meeting in June 1989. He claimed he was not a party to the contract but only a witness to the contract. He also testified the invoice of May 25, 1989 (Exh. J.) was not paid because the plaintiff did not do the work to get subdivision approval.
The evidence in this case leads the court to conclude the defendant was a principal and liable on the contract. The reference on the contract to Stonyridge, Inc. did not relieve the defendant from liability because the corporation never came into existence, and furthermore, the defendant signed individually and not as an agent or official of the corporation.
It is also the conclusion of this court that the testing program by the plaintiff's employees was properly performed under the supervision of Michael Turner, a professional engineer. By April 26, 1989, the day after the contract was signed the plaintiff had completed the testing program and had not only maps of the tested sites but also the raw data available for the examination by the town if requested. The only reason the application was not submitted for subdivision approval at the July 1989, meeting date was the delay in signing the contract, and the nonpayment of the invoices sent to the defendant by the plaintiff.
For the foregoing reasons this court concludes the defendant CT Page 8419 breached the contract with the plaintiff, and there is no merit to the defendant's set off or counterclaim. Therefore in accordance with the agreed terms of the contract, judgment shall enter for the plaintiff for $132,832.38.
Howard F. Zoarski Judge Trial Referee